```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

ALLSTATE INSURANCE COMPANY,    :
                               :
     Plaintiff,                :
                               :
V.                             :     Case No. 3:13-CV-01101(RNC)
                               :
JOHN OPIE,                     :
                               :
     Defendants.               :
```

MEMORANDUM AND ORDER

Plaintiff, Allstate Insurance Company, brings this diversity case seeking a declaration that it is not obligated to defend its insured, John Opie, in a lawsuit pending in state court. Allstate's motion for summary judgment has been denied in a bench ruling.  This memorandum provides a written statement of reasons for the denial.  In light of this ruling, and in accordance with previous discussions, counsel are expected to confer and submit a joint report concerning the steps that need to be taken to move this case to a conclusion.

I. Background

The material facts are not in dispute.  The underlying state lawsuit against Opie, Kimberly Chamerda, et al. v. John Opie, et al., NNH-CV-13-60373288, arises out of a dispute concerning title to real property. According to the complaint in that case, Kimberly Chamerda owns property at 19 Buena Vista Drive in Branford, having taken title under the will of Elsie Nemeth in 2006.  Nemeth herself took the property through the will of Howard Kelsey in 1977.  But in 2004, another Chamerda defendant,

Ruth Warner, gave Opie a quitclaim deed purporting to transfer a portion of the land.  Opie then had the parcel surveyed, claimed ownership, and sought a hearing in the Branford Probate Court to determine his interest.  By the time the matter was resolved in Chamerda's favor in 2012, Opie had lodged two appeals and twice caused certificates of *lis pendens* to be placed on the land records.

According to the Chamerda complaint, Opie knew or had reason to know that his claim of title was baseless.  He nonetheless tried to establish an interest in the property for eight years, which clouded Chamerda's rightful title, diminished the property's value, and interfered with her efforts to sell the land.  On the basis of these allegations, the Chamerda complaint seeks damages for intentional slander of title, negligent slander of title and vexatious litigation.

Allstate insures Opie under two policies, a homeowners policy and an umbrella policy.  Under the homeowners policy, Allstate promises to defend Opie against suits seeking damages because of "bodily injury or property damage arising from an occurrence to which this policy applies."  "Property damage" is defined as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction."  "Occurrence" means "an accident."

The umbrella policy obligates Allstate to defend against lawsuits seeking damages for "personal injury" caused by an

"occurrence," defined as "an accident."  Under the umbrella policy, "personal injury" encompasses malicious prosecution, libel, slander, misrepresentation and other torts.  "Property damage" is defined to include not just loss of use of tangible property that results from "physical injury or destruction," but also "loss of use of tangible property not physically injured if the loss of the use is caused by an occurrence."

Each policy contains an "intentional acts" exclusion.  These provisions relieve Allstate of the obligation to defend lawsuits alleging that the insured "intended or expected" to cause bodily injury, property damage, or personal injury.

In support of its motion for summary judgment, Allstate argues that Opie's conduct regarding the Branford property cannot be viewed as an "occurrence" within the meaning of the policies because his eight-year campaign to obtain title was hardly accidental.  In addition, it argues that the Chamerda complaint does not allege damages covered by either policy.  "Property damage" is not alleged, Allstate contends, because the cloud on the plaintiff's title was not an injury to "tangible property," and "personal injury" is not alleged because neither slander of title nor vexatious litigation is among the torts embraced under that heading.  Id. at 18–20.  Finally, Allstate argues that the "intentional acts" exclusion applies because Opie's purpose in litigating was to prevent Chamerda from selling the Branford property.

II. Discussion

An insurer's duty to defend is broader than its duty to indemnify.  If the complaint against the insured includes an allegation that "falls even *possibly* within the coverage," the insurer must defend "irrespective of the insured's ultimate liability."  Capstone Bldg. Corp. v. American Motorists Ins. Co., 67 A.3d 961, 992-93 (Conn. 2013) (emphasis in original).  If just one of the Chamerda allegations falls within either of the policies, then, Allstate is obliged to defend Opie.

Here, at least one allegation triggers the duty to defend. The Chamerda complaint includes a count of vexatious litigation, which qualifies as "personal injury" under the umbrella policy. The policy's definition of "personal injury" does not explicitly employ the phrase "vexatious litigation."  But "personal injury" is defined to include the tort of malicious prosecution, and the elements of these two torts "essentially are identical."  Bhatia v. Debek, 948 A.2d 1009, 1017 (Conn. 2008).[1]  In fact, the Connecticut Supreme Court has stated that vexatious litigation is "a type of malicious prosecution," Vandersluis, 407 A.2d at 985, and has assumed *sub silentio* that an action for vexatious litigation triggers a duty to defend under a provision that expressly covers malicious prosecution.  QSP, Inc. v. Aetna Cas.

---

[1]The sole difference is that a suit for vexatious litigation "is based upon a prior civil action," and a suit for malicious prosecution is based on "a prior criminal complaint." Vandersluis v. Weil, 407 A.2d 982, 985 (Conn. 1978).

& Sur. Co., 773 A.2d 906, 919 (Conn. 2001) ("[W]e conclude that, because the [insured defendants] did not allege that they had suffered personal injury due to vexatious litigation or malicious prosecution, personal injury coverage was not triggered."). Because vexatious litigation and malicious prosecution are so similar as to be essentially the same tort, vexatious litigation is a form of "personal injury" under the umbrella policy.

Allstate points out that even if vexatious litigation qualifies as "personal injury" under the umbrella policy, the policy covers "personal injury" only if it is caused by an "occurrence." An "occurrence" is an "accident," and Opie's litigation conduct was not accidental. ECF No. 21-3, at 12-13. Allstate's argument highlights an ambiguity: the policy covers malicious prosecution, an intentional tort, but only if it is accidental. Construing this ambiguity in favor of Opie, as the Court must, Capstone, 67 A.3d at 974, the policy provides coverage for vexatious litigation. See Imperial Cas. & Indem. Co. v. State, 714 A.2d 1230, 1239 (Conn. 1998) (resolving this same "internal inconsistency" by interpreting the policy "to include coverage for intentional acts").

Allstate has the better of the remaining arguments. The Chamerda suit does not concern "property damage" within the meaning of either policy. "Property damage" includes harm only to tangible property. Local Rule 56(a)(2) Statement, ¶ 40. Opie allegedly clouded Chamerda's title, but he did not damage the

real property or prevent Chamerda from using it.  Nor does Opie's alleged conduct qualify as "misrepresentation," a form of "personal injury" under the umbrella policy, on the theory that he misrepresented his interest in the Branford property during litigation.  The term "misrepresentation" has a settled meaning in the law of torts.  Its inclusion in a list of other torts that qualify as "personal injury" suggests that it should be assigned its legal meaning, not the broader one Opie urges.

III.  Conclusion

Accordingly, Allstate is not entitled to summary judgment. To help move the case to a conclusion, the parties will confer and submit a joint status report on or before December 31, 2014.

So ordered this day of 8th day of December 2014.

                              _____/s/_____
                              Robert N. Chatigny
                         United States District Judge